### FOSS et al. v. PORTLAND TERMINAL CO.

(Circuit Court of Appeals, First Circuit. February 13, 1923.)

No. 1581.

Injunction ⬅101(1)—Injunction against strike by railroad employees is prohibited.

Clayton Act, § 20 (Comp. St. § 1243d), prohibiting an injunction in any case between an employer and employees involving a dispute concerning terms or conditions of employment unless necessary to prevent irreparable injury to property, and providing that no such injunction shall prohibit any person or persons from terminating any relation of employment, prohibits an injunction restraining railroad employees from striking in a peaceable and law-abiding manner, even though their strike would be a breach of an agreement entered into under the Transportation Act of 1920; that in such case a breach of their agreement could not be found to be irreparable injury within the meaning of the act.

Appeal from the District Court of the United States for the District of Maine; Clarence Hale, Judge.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the Portland Terminal Company against Thomas D. Foss and others. From an interlocutory decree granting a preliminary injunction (283 Fed. 204), defendants appeal. Injunction dissolved, and case remanded to the District Court, with directions to dismiss it.

William A. Connellan and Nathan W. Thompson, both of Portland, Me., for appellants.

Charles H. Blatchford and George E. Fogg, both of Portland, Me. (Edward W. Wheeler, of Brunswick, Me., on the brief), for appellee.

Before BINGHAM, Circuit Judge, and PETERS and BREWSTER, District Judges.

BINGHAM, Circuit Judge. This is an appeal from an interlocutory decree of the District Court for the District of Maine granting a preliminary injunction restraining the defendants, appellants, "from in any manner instituting or authorizing or directing, or by means of threats or intimidations causing any strike order to be issued, or proceeding with or carrying on any such strike."

The complainant is a carrier in interstate commerce engaged in the operation of a railroad. The defendants are its employees who are members of an organization known as Local 15 of the Brotherhood of Railroad Station Employees.

It appears that the complainant and the defendants, acting through the Brotherhood, entered into an agreement in the latter part of 1921, under the Transportation Act of 1920 (41 Stat. 456), which agreement is still in force, and in which it was expressly provided that it "shall continue in effect until it is changed as provided herein, under the provisions of the Transportation Act of 1920"; that section 301 of the Transportation Act made it "the duty of all carriers and their officers, employees, and agents to exert every reasonable effort and adopt every available means to avoid any interruption to the operation of any carrier growing out of any dispute between the carrier and the employees or subordinate officials thereof," and provided that all such disputes shall first be taken up in conference between the carrier and the employees and that, if not decided in such conference, "it shall be referred by the parties thereto to the board which under the provisions of this title is authorized to hear and decide such dispute."

It further appears that on March 21, 1922, the Brotherhood requested a conference with the complainant as to a revision of certain rules in the agreement; that a conference was had; that the parties failed to decide the dispute; that the Brotherhood referred the dispute to the United States Labor Board under the provisions of the Transportation Act; that a hearing was had and the dispute submitted to said Labor Board for its decision, but that no decision had been rendered at the time of the filing of the bill; that the complainant at the time of the filing of the bill was paying its employees in accordance with the decisions of the Labor Board made in conformity to the Transportation Act of 1920, which decisions became effective July 1, 1922; that on July 7, 1922, Foss, the chairman of Local 15, requested

the complainant to restore the rates of pay in effect prior to July 1, 1922; that the complainant arranged for a conference with the representatives of the Brotherhood on July 17, 1922; that, before the conference took place, the secretary and chairman of the Brotherhood distributed among its members a ballot to see if they would authorize their chairman (with the approval of the Grand President) to call a strike unless the management granted (1) immediate reconsideration of reduction in wages, and (2) immediate reconsideration of decision doing away with time and one-half for Sundays, holidays, and overtime, and a satisfactory settlement made; and that a vote of the Brotherhood, taken at a meeting held on July 14, 1922, showed that a large majority of its membership voted "yes."

It was agreed that the strike order, if issued, would seriously interrupt the operations of the complainant unless the positions occupied by the employees whose services were withdrawn in pursuance of said order were promptly filled by competent men, and the court below found that "an irreparable injury would be done to the complainant and to the public by the issuing and carrying out of the strike order."

The reasoning by which the court below appears to have proceeded in reaching its conclusion that an injunction should issue was that the rights of the parties depended largely upon the Transportation Act of 1920, under which the contract was made; that this statute was passed some years after the Clayton Act (38 Stat. 730) and with an evident intention to meet some questions raised by that act; that the Transportation Act was clearly intended to cover the transportation field and to regulate, as far as possible, the relations between common carriers and other parties; that it further sought "to regulate the relations between carriers and their employees, by establishing means for the adjustment of all matters of controversy; it protected carriers from extortionate demands of their employees, and employees from arbitrary conditions imposed by employers; it recognized the interest of the general public in transportation service and sought to protect it from disasters incident to an interruption of the transportation business; it undertook to establish a working means for the settlement of labor disputes, without resort to strikes and other old methods;" that the employees, having agreed in their contract to the method of settling disputes provided for in the act of 1920, thereby agreed to waive their right to strike to effect such settlement; "that the strike ballot was a clear challenge to the method of settlement marked out by the Transportation Act and adopted by the employees in their contract;" and that, if the contemplated action had been carried into effect, it would have been in violation of the complainant's rights.

Having reached the conclusion that irreparable injury would be done to the complainant and the public by the issuing and carrying out of the strike order and that the Transportation Act provided no method for its enforcement but left it to the courts, the court then takes up the question whether the complainant may be allowed to proceed by the injunctive method. As to this matter it said:

"The Clayton Act provides that no injunction shall be granted by courts of the United States involving any dispute concerning terms or conditions of

employment 'unless necessary to prevent irreparable injury to property or to property rights.' "

And having found that the strike order, if issued and carried out, would have worked irreparable injury to the complainant, he apparently concluded that the Clayton Act did not prohibit the issuing of an injunction, but authorized it, and ordered an injunction to issue.

If it be assumed that the action taken by the defendants in their vote of July 14th, if carried out, would be a breach of their contract to confer and to arbitrate their differences, it does not follow that the complainant is entitled to injunctive relief. There can be no doubt that this is a case between an employer and its employees involving a dispute concerning terms or conditions of employment and one where there is nothing to show that the defendants, the employees, in passing the vote contemplated anything other than terminating their relationship of employment with the complainant in a peaceable and law-abiding manner.

In 1914 Congress enacted the Clayton Act, in which it provided:

"Section 20. That no restraining order or injunction shall be granted by any court of the United States, or a judge or the judges thereof, in any case between an employer and employees * * * involving, or growing out of, a dispute concerning terms or conditions of employment, unless necessary to prevent irreparable injury to property, or to a property right, of the party making the application, * * * and such * * * property right must be described with particularity in the application, which must be in writing and sworn to by the applicant or by his agent or attorney.

"And no such restraining order or injunction shall prohibit any person or persons, whether singly or in concert, from terminating any relation of employment, or from ceasing to perform any work or labor, or from recommending, advising or persuading others by peaceful means so to do," etc. (Comp. St. § 1243d).

The first paragraph of section 20 of the act contemplates that conditions may arise out of a dispute between employer and employees as to terms and conditions of employment where an injunction may be necessary to prevent irreparable injury to property or a property right of a complainant, but the second paragraph of that section makes it plain that no such restraining order or injunction, if issued, "shall prohibit any person or persons, whether singly or in concert, from terminating any relation of employment, or from ceasing to perform any work or labor, or from recommending, advising or persuading others by peaceful means so to do." The second paragraph, when read in connection with the first paragraph, would also seem to indicate that the damage occasioned by employees in peaceably leaving the service of their employer, because of a dispute as to terms and conditions of employment, if not damnum absque injuria, would not constitute irreparable injury within the meaning of the first paragraph, and that such damage could not be found to result therefrom. We find nothing in the decisions of the Supreme Court at variance with what we have here said. Duplex Printing Press v. Deering, 254 U. S. 443, 41 Sup. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196; American Steel Foundries v. Tri-City Central Trades Council, 257 U. S. 42, 184, 42 Sup. Ct. 72, 66 L. Ed. 189.

The injunction is dissolved, and the case is remanded to the District Court, with directions to dismiss the same, with costs to appellants in this court and in the District Court.